# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

ADRIAN B. RILEY,

       Plaintiff,

    v.

H. VAUGHN, Nurse, Wheeler Correctional
Facility; PAT CLARK, Medical Director,
Wheeler Correctional Facility; SHARON
LEWIS, Medical Director, Georgia
Department of Corrections; JOHN DOE,
Medical Doctor, Savannah Memorial Hospital;
JANE DOE, Medical Doctor, Savannah
Memorial Hospital; DR. WYNN, Medical
Doctor, St. Joseph's Memorial Hospital and
Georgia State Prison; JOHN OR JANE DOE,
Medical Director, Hays State Prison; JOHN
OR JANE DOE, Medical Director, Autry State
Prison; JOHN OR JANE DOE, Medical
Director, Central State Prison; and ROY
SABINE, Medical Director, Georgia State
Prison,

       Defendants.

CIVIL ACTION NO.: 6:15-cv-29

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia,

submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983 alleging that

he has been denied medical care at numerous prisons throughout Georgia. (Doc. 1.) The Court

has conducted the requisite frivolity review of that Complaint. Plaintiff's allegations arguably

state colorable claims for relief under 42 U.S.C. § 1983 against Defendants Medical Director,

Central State Prison, and Roy Sabine, Medical Director of Georgia State Prison for failure to

provide adequate medical care under the Eighth Amendment. Consequently, a copy of

Plaintiff's Complaint and a copy of this Order shall be served upon these two Defendants by the United States Marshal without prepayment of cost.

However, for the reasons stated below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against all Defendants in their official capacities. I further **RECOMMEND** that the Court **DISMISS** all of Plaintiff's claims against the following Defendants: H. Vaughn, Nurse, Wheeler Correctional Facility; Pat Clark, Medical Director, Wheeler Correctional Facility; Sharon Lewis, Medical Director, Georgia Department of Corrections; John Doe, Medical Doctor, Savannah Memorial Hospital; Jane Doe, Medical Doctor, Savannah Memorial Hospital; Wynn, Doctor, St. Joseph's Memorial Hospital and Georgia State Prison; Jane or John Doe, Medical Director, Hays State Prison; Jane or John Doe, Medical Director, Autry State Prison. I **RECOMMEND** that the Court **DENY** Plaintiff's request for injunctive relief. Additionally, to the extent Plaintiff seeks to assert claims against Defendant Roy Sabine, Medical Director, Georgia State Prison, due to Plaintiff's first incarceration at Georgia State Prison, I **RECOMMEND** that those claims be **DISMISSED**.

## BACKGROUND[1]

Plaintiff filed this action against ten Defendants on March 27, 2015. (Doc. 1.) He alleges that he has received inadequate medical care dating back to August of 2010. Because Plaintiff's allegations span numerous years and several facilities, the Court summarizes them as follows:

- While housed at Wheeler Correctional facility in Alamo, Georgia, Defendant was placed in the hole and began to have severe debilitating pain. (Id. at p. 8.) On August 21, 2010, Plaintiff was examined in the medical unit by Defendant Nurse Vaughn. Id. Nurse Vaughn did not examine Plaintiff but gave him gas medicine. Id.

---

[1] The below recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

- On August 28, 2010, another nurse at Wheeler examined Plaintiff and determined that he needed surgery for a ruptured appendix. Id. Plaintiff was then transferred to Savannah Memorial Hospital where Defendant Doctors John and Jane Doe operated on Plaintiff. Id.

- After the first surgery at Savannah Memorial, Plaintiff was taken back to Wheeler Correctional. Id. He continued to experience extreme pain and he complained to Defendant Medical Director Pat Clark. However, the staff at Wheeler refused to address his concerns. Id. Defendant Clark issued a response to Plaintiff's grievance stating that the nurse involved had been dismissed. (Id. at p. 9.)

- Then, Plaintiff appealed Clark's denial of his grievance to Defendant Sharon Lewis, Medical Director of Georgia Department of Corrections. Id. On April 5, 2011, Defendant Lewis denied the grievance without mentioning Plaintiff's continued pain. Id.

- Eight months after the first operation, which would be approximately May 1, 2011, Plaintiff was transferred to Hays State Prison in Trion, Georgia. Id. Plaintiff wrote to Defendant John Doe, Medical Director at Hays State Prison, that he was continuing to experience pain but never received a response to his grievances. Id. Plaintiff visited the medical department at Hays State Prison but was only seen by a nurse and never received an examination or medicine. Id.

- After five months at Hays State Prison, which would be approximately December 1, 2011, Plaintiff was transferred from Hays State Prison to Autry State Prison in Pelham, Georgia. (Id. at p. 10.) Defendant wrote to Defendant Medical Director at Autry State Prison about his ongoing pain but never received a response.

- Five months later, which would be approximately May 1, 2012, Plaintiff was transferred from Autry State Prison to Rogers State Prison in Reidsville, Georgia. <u>Id.</u> While at Rogers State Prison, Plaintiff was examined by Defendant Doctor Wynn. On June 5, 2012, Defendant Wynn operated on Plaintiff at Saint Joseph's Hospital in Savannah. <u>Id.</u>

- After this second operation, Plaintiff was released from the hospital to Valdosta State Prison in Valdosta, Georgia. <u>Id.</u> Plaintiff was only at Valdosta State Prison for two months, which would have been until approximately August 5, 2012. <u>Id.</u> At that time, Plaintiff was transferred to Wilcox State Prison in Abbeville, Georgia. <u>Id.</u>

- Plaintiff continued to experience pain, but the medical staff at Wilcox State Prison refused to respond to Plaintiff's pleas for treatment. <u>Id.</u> However, before he could start more grievance actions, Plaintiff was transferred to Georgia State Prison in Reidsville, Georgia. <u>Id.</u>

- Upon arrival at Georgia State Prison, Plaintiff was again seen by Defendant Doctor Wynn. (<u>Id.</u> at p. 11-12.) Defendant Wynn performed a third surgery on Plaintiff at Saint Joseph's Hospital. (<u>Id.</u> at p. 12.) The date of this third surgery is not clear.

- After his third surgery, Plaintiff was transferred to Central State Prison in Macon, Georgia. <u>Id.</u> Plaintiff began experiencing abdominal pain at Central State Prison, and he wrote Defendant Medical Director of Central State Prison directly regarding this pain. <u>Id.</u> However, the medical director "refused any response to Plaintiff's pleas for medical care." <u>Id.</u>

- Plaintiff was then transferred back to Autry State Prison. <u>Id.</u> On April 4, 2014, employees at Autry State Prison took Plaintiff to Phoebe Putney Memorial Hospital for

four days where he underwent several tests to assess why he was still in pain and having severe problems with bodily functions. Id.

- On May 12, 2014, Plaintiff was transferred back to Georgia State Prison. Id. Plaintiff continued to experience constant abdominal pain, and he wrote to Defendant Medical Director Roy Sabine several times. (Id. at pp. 11–12.) Plaintiff received no response from Defendant Sabine. (Id. at p. 12.) Plaintiff filed a grievance which was denied and an appeal of that denial which Defendant Lewis denied. Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R.

Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

Plaintiff has brought this lawsuit against ten Defendants pursuant to 42 U.S.C. § 1983. He contends that these Defendants violated his Eighth Amendment rights by refusing to provide him adequate medical treatment. Plaintiff sues Defendants in their individual and official capacities. The Court will discuss the viability of Plaintiff's official capacity claims and then turn to his claims against each Defendant in turn.

## I.        Official Capacity Claims

Plaintiff cannot sustain a Section 1983 claim against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities, and these claims should be **DISMISSED**.

## II.     Claims Against H. Vaughn, Nurse Wheeler Correctional Facility

Plaintiff alleges that on August 21, 2010, Defendant Nurse Vaughn saw him in the medical unit at Wheeler Correctional Facility.[2]  (Doc. 1, p. 8.)  He states that Nurse Vaughn did not examine him but instead gave him gas medicine.  Id.  These events occurred more than five years before he filed this Complaint.

Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."  Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011).  In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all § 1983 actions filed in federal court in that state.  Owens v. Okure, 488 U.S. 235, 236, 249–50 (1989).   Georgia has a two-year statute of limitations for personal injury actions.  O.C.G.A. § 9-3-33.  Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run."  Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003).  As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  Id.  "To dismiss a prisoner's complaint as time-barred prior to service, it must 'appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'") (quoting Leal, 254 F.3d at 1280) (alterations in original).

Plaintiff signed his Complaint on March 22, 2015, and it was filed in this Court on March 27, 2015.  (Doc. 1.)  Thus, given the two years limitation period, the operative date for assessing the timeliness of Plaintiff's Complaint is March 22, 2013.  Any claims that accrued

---

[2]  Wheeler Correctional Facility is a state prison operated by the Correctional Corporations of America ("CCA").  Private contractors that run prisons, like CCA, act under color of state law for purposes of Section 1983 liability.  Farrow v. West, 320 F.3d 1235, 1239 n. 3 (11th Cir.2003).

before that date (or for which the statute of limitations was not tolled until at least that date), are untimely.

Plaintiff was aware of the facts giving rise to his claims against Nurse Vaugh on August 21, 2010, which is the date Plaintiff asserts Vaughn denied his medical needs. Of course, this is well before the operative date of March 22, 2013. Thus, on its face, Plaintiff's claims against Nurse Vaughn are untimely by almost three years.

The Court notes Plaintiff's assertion that he filed informal and formal grievances, which could serve to toll the statute of limitations period. In Leal v. Ga. Dep't of Corr., 254 F.3d 1276 (11th Cir. 2001), the Eleventh Circuit Court of Appeals "decline[d] to decide in the first instance the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations." 254 F.3d at 1280. The undersigned recognizes that Georgia law does not permit tolling and the Eleventh Circuit has not addressed this issue directly. Walker v. United States, 196 F. App'x 774, 777 (11th Cir. 2006) (We have declined to decide whether the statute of limitations is tolled in a § 1983 case while a petitioner is pursuing administrative remedies."). However, the undersigned concludes, as have several Courts of Appeals, that tolling should apply. Nickolich v. Rowe, 299 F. App'x 725, 725-26 (9th Cir. 2008) (finding that, given California's two-year statute of limitations, a state prisoner's Section 1983 deliberate indifference claim was not barred by the statute of limitations, where the inmate commenced his prison grievance process immediately after his claim accrued and filed a complaint within two years of completing the mandatory grievance process); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (holding that a federal court relying on the Illinois statute of limitations in a Section 1983 case must toll the limitations period while a prisoner completes the administrative grievance process); Brown v.

Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (concluding that tolling is appropriate while prisoner completes mandatory exhaustion requirements); Harris v. Hegmann, 198 F.3d 153, 157–59 (5th Cir. 1999) (same); see also Quilling v. Humphries, No. 4:10cv404-WS, 2010 WL 4783031, at *1 (N.D. Fla. Nov. 17, 2010) (referring a case back to the magistrate judge because it could not be determined that the statute of limitations necessarily barred the plaintiff's claims); and Baldwin v. Benjamin, No. 5:09-CV-372(CAR), 2010 WL 1654937 (M.D. Ga. Apr. 23, 2010) (recognizing that the Eleventh Circuit has not adopted a rule regarding the effect of exhaustion on tolling, but noting that the exhaustion requirement may operate to toll the statute of limitations). Accordingly, the applicable statute of limitations period was tolled while Plaintiff pursued his administrative remedies, which was a prerequisite to filing suit because he is imprisoned.

However, there is nothing before the Court which indicates the exhaustion of Plaintiff's administrative remedies took nearly three years' time to complete to render this cause of action timely filed as to Nurse Vaughn. Hughes, 350 F.3d at 1163 ("[Plaintiff], unlike Leal, has pointed us to no particular reason why the statute of limitations might be tolled in his case, and we can discern none from the record."). Indeed, he states that the appeal of his grievance as to his treatment at Wheeler was denied on April 5, 2011. (Doc. 1, p. 9.)

Plaintiff's untimely claims against Nurse Vaughn are also not saved by the continuing violations doctrine. The continuing violation doctrine holds that a plaintiff's action is not time-barred where some of the alleged violations occurred within the statutory period, even though other violations did not, because the early acts were part of a continuing wrong. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir.2001). "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a

one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." Lovett v. Ray, 327 F.3d 1181, 1183 (2003). Refusal to provide medical treatment has been held to constitute a continuing violation in some circumstances. See Shomo v. City of N.Y., 579 F.3d 176, 182 (2d Cir.2009) (holding that "a policy of doctors and prison staff disregarding medical treatment recommendations" constitutes a continuing violation); Neel v. Rehberg, 577 F.2d 262, 264 (5th Cir.1978) (refusal to provide medical treatment, shower, telephone, and visiting privileges to prisoner constitutes continuing wrong); Donaldson v. O'Connor, 493 F.2d 507, 529 (5th Cir.1974) (holding that a § 1983 action brought by a former mental patient for continuous civil confinement without psychiatric treatment did not accrue until the patient was released).

However, the Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir.2006). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." Hipp, 252 F.3d at 1222. Even where a continuing violation for disregarding an inmate's need for surgery has been found, the Eleventh Circuit has held that the cause of action accrues, and the statute of limitations begins to run, once the plaintiff receives the surgery. Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) ("The facts, as alleged in the complaint, however, support an inference of continued disregard of Robinson's need of medical treatment for his hernia until October 3, 2003, when Robinson's hernia surgery was performed."). Similarly, once an inmate is transferred from the prison where the constitutional violation occurred to another facility, the statute of limitations clock begins to tick.

See <u>Robinson v. United States</u>, 327 F. App'x 816, 818 (11th Cir. 2007) ("Plaintiff sufficiently alleges in his Complaint a continuing violation that did not end until he was transferred to another prison in May of 2007.")

Even if Plaintiff was unable to bring his claims against Nurse Vaughn when they first occurred, on August 21, 2010, his claims clearly accrued well before March 22, 2013 (which, again, is the date two years before he signed this Complaint). He was taken out of Wheeler Correctional Facility and to surgery at Savannah Memorial Hospital on August 28, 2010. (Doc. 1, p. 8.) Moreover, eight months after the first operation, which would be approximately May 1, 2011, Plaintiff was transferred to Hays State Prison in Trion, Georgia. <u>Id.</u> Indeed, Plaintiff states that before he left Wheeler Correctional Facility he filed grievances regarding his alleged mistreatment at that facility. <u>Id.</u> Thus, Plaintiff was clearly armed with sufficient facts that should have alerted a reasonable person to act to assert his rights. <u>Hipp</u>, 252 F.3d at 1222.

Thus, the face of Plaintiff's Complaint reveals beyond a doubt that he can prove no set of facts which would avoid a statute of limitations bar as to Nurse Vaughn. Consequently, the Court should **DISMISS** Plaintiff's claims against Nurse Vaughn.

## III.    Claims against Pat Clark, Medical Director Wheeler Correctional Facility

Under the analysis set forth above in Section II, any claims against Defendant Pat Clark, Medical Director of Wheeler Correctional Facility are untimely. Plaintiff's claims against Clark accrued well before March 22, 2013 (two years before he signed his Complaint). The statute of limitations on Plaintiff's claims against Clark began to run, at the latest, on April 5, 2011, when Plaintiff's appeal of his grievance as to his treatment at Wheeler Correctional Facility was denied or when he was transferred to Hays State Prison on May 1, 2011. (Doc. 1, p. 9.) Thus, the face of Plaintiff's Complaint reveals beyond a doubt that he can prove no set of facts which would

avoid a statute of limitations bar as to Clark. Consequently, the Court should **DISMISS** Plaintiff's claims against Clark.

## IV. Plaintiff's Claims against Sharon Lewis, Medical Director at Georgia Department of Corrections

Plaintiff alleges that Defendant Sharon Lewis denied Plaintiff's grievance regarding his treatment at Wheeler Correctional Facility on April 5, 2011. (Doc. 1, p. 9.) Plaintiff was aware of the facts underlying this claim in April of 2011, almost four years before he brought this lawsuit. Consequently, the two year statute of limitations bars this claim.

In addition, Plaintiff cannot sustain a cause of action against Defendant Lewis, or any Defendant, based on the denial of a grievance. Asad v. Crosby, 158 F. App'x 166 (11th Cir. 2005) (upholding district court's granting of summary judgment on Plaintiff's claim that defendants denied the plaintiff's grievances); see Hood v. Johnson, No. CV606-61, 2006 WL 3085560, at *2 (S.D. Ga. Oct. 27, 2006) ("the mere filing of a grievance with a supervisor does not alone make the supervisor liable for the alleged unconstitutional conduct referenced in the grievance."); Pressley v. Beard, No. 3:CV-04-2535, 2005 WL 2347369, at *4 (M.D. Pa. Sept. 26, 2005) (liability cannot be placed on prison officials because officials failed to take corrective action following the plaintiff's unsuccessful grievance).

Furthermore, in Section 1983 actions, liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[3] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's

---

[3] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir.1992).

conduct and the alleged violations.  Id. at 802.  "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct."  Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff wishes to hold Defendant Lewis liable based solely on her supervisory position in the Department of Corrections.  Again, the only involvement that Plaintiff mentions as to this Defendant is her denial of a grievance which cannot form the basis of liability. Consequently, Plaintiff has not established that Defendant Lewis had any personal involvement in the violation of his constitutional rights or that there is any causal connection between her conduct and the violation.

For all of these reasons, the Court should **DISMISS** all of Plaintiff's claims against Defendant Lewis.

## V.     Plaintiff's Claims against John Doe and Jane Doe, Medical Doctors at Savannah Memorial Hospital

Plaintiff brings claims against Doctors John and Jane Doe, who performed the first operation on Plaintiff in late August or early September of 2010 at Savannah Memorial Hospital. (Doc. 1, p. 8.)  As set forth in Section II above, Plaintiff was required to bring his Section 1983 claims against these doctors within two years of those claims accruing.  However, this surgery occurred almost five years before Plaintiff filed this lawsuit.  Id.  Moreover, Plaintiff's Complaint reveals that he was apprised of the facts that he needed to bring these claims shortly after the surgery.  He states that after the first surgery at Savannah Memorial, he was taken back

to Wheeler Correctional Facility, he continued to experience extreme pain, and he complained to Defendant Medical Director Pat Clark. Id. Accordingly, the Court should dismiss Plaintiff's claims against John Doe and Jane Doe, Medical Doctors at Savannah Memorial Hospital as untimely.

## VI. Plaintiff's Claims against Dr. Wynn, Medical Doctor, St. Joseph's Memorial Hospital and Georgia State Prison

Plaintiff brings claims against Defendant Wynn pertaining to two surgeries performed at Saint Joseph's Hospital in Savannah. The first of these operations (the second of Plaintiff's surgeries overall) occurred on June 5, 2012. (Doc. 1, p. 10.) Dr. Wynn also operated on Plaintiff after Plaintiff was transferred to GSP. (Id. at p. 11-12.) The date of Dr. Wynn's second operation on Plaintiff (Plaintiff's third surgery overall) is unclear.

Based on the law set forth in Section II above, any claims relating to the June 5, 2012 operation are untimely. Any claims related to this first surgery accrued well before March 22, 2013 (which, again, is the date two years before this lawsuit was filed). Plaintiff states that he continued to experience pain after this surgery. Thus, he was sufficiently aware of facts supporting claims related to the June 5, 2012 operation more than two years before he filed this lawsuit.

Furthermore, Plaintiff fails to state plausible facts that Dr. Wynn violated Plaintiff's Eighth Amendment rights through either the June 5, 2012 operation or the last operation. In order to state a claim for relief under Section 1983, Plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, Plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 828 (1994). This right to safety is violated when a defendant shows a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize

the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Det. Center Staff, 262 Fed. Appx. 959, 964 (11th Cir.2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Plaintiff has failed to allege sufficient facts to state a claim that Defendant Wynn disregarded a medical need with conduct that is more than gross negligence. Plaintiff has not even stated how Defendant Wynn's treatment was deficient. The most that Plaintiff has stated is that Defendant Wynn made a "mistake" the first time he operated on Plaintiff (doc. 1, p. 11) and that Defendant Wynn failed "to apply free works standards to Plaintiff's treatment" (id., pp. 13-14). These conclusory statements do not meet the level of specificity required to plead a viable claim for relief. Twombly, 550 U.S. at 555. Moreover, Plaintiff's allegations, at most, accuse Defendant Wynn of negligence. The Supreme Court has emphasized that mere negligence in

providing medical treatment or a difference of medical opinion does not give rise to an Eighth Amendment claim, and medical malpractice does not become a constitutional violation simply because the victim is incarcerated. <u>Estelle</u>, 429 U.S. at 106; <u>see also</u>, <u>Kelley v. Hicks</u>, 400 F.3d 1282, 1285 (11th Cir. 2005) ("Mere negligence, however, is insufficient to establish deliberate indifference."); <u>Moore v. Mcneil</u>, No. 09-22754-CIV, 2009 WL 7376782, at *5 (S.D. Fla. Dec. 7, 2009) report and recommendation adopted in part, No. 09-22754-CIV, 2011 WL 304313 (S.D. Fla. Jan. 28, 2011) ("Treatment violates the Eighth Amendment only if it involves something more than a medical judgment call, an accident, or an inadvertent failure. It must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.") (internal quotations and citations omitted) (quoting <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n. 4 (5 Cir.1980), & <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir.1986)).

For these reasons, the Court should dismiss all of Plaintiff's claims against Defendant Wynn.

## VII.   Claims Against John or Jane Doe, Medical Director Hays State Prison

Plaintiff was transferred to Hays State Prison eight months after his first surgery which would be approximately May 1, 2011. (Doc. 1 at p. 9.) During his time at Hays State Prison, Plaintiff wrote to Defendant John Doe, Medical Director at Hays State Prison, that he was continuing to experience pain but never received a response to his grievances. <u>Id.</u> Plaintiff visited the medical department at Hays State Prison but was only seen by a nurse and never received an examination or medicine. <u>Id.</u> After five months at Hays State Prison, which would be approximately December 1, 2011, Plaintiff was transferred from Hays State Prison to Autry State Prison in Pelham, Georgia. (<u>Id.</u> at p. 10.)

Based on the law set forth in Section II above, Plaintiff's claims relating to the alleged denial of his medical care at Hays State Prison are barred by the statute of limitations. Plaintiff was transferred from Hays State Prison in December of 2011. Furthermore, he was aware of facts underlying his claims while at Hays State Prison as he filed a grievance regarding his treatment. Thus, any claims related to this first surgery accrued well before March 22, 2013 (which, again, is the date two years before this lawsuit was filed). Consequently, Plaintiff's claims against Defendant Medical Director at Hays State Prison should be **DISMISSED** as untimely.

## VIII. Claims against Defendant John or Jane Doe, Medical Director, Autry State Prison

Plaintiff was transferred from Hays State Prison to Autry State Prison on approximately December 1, 2011. (Doc. 1, p. 10.) During his first stay at Autry State Prison, Defendant wrote to Defendant Medical Director at Autry State Prison about his ongoing pain but never received a response. Id. Five months after his arrival at Autry State Prison, which would be approximately May 1, 2012, Plaintiff was transferred to Rogers State Prison. Id.

As with Hays State Prison, based on the law set forth in Section II above, Plaintiff's claims relating to the alleged denial of his medical care during this first stay at Autry State Prison are barred by the statute of limitations. Plaintiff was transferred from Autry State Prison in May of 2012. Furthermore, he was aware of facts underlying his claims while at Autry State Prison as he wrote correspondence regarding his treatment. Thus, any claims related to this first stay at Autry State Prison accrued well before March 22, 2013 (which is two years before this lawsuit was filed).

Plaintiff was transferred back to Autry State Prison after his third surgery. (Id. at p. 11.) On April 4, 2014, employees at Autry State Prison took Plaintiff to Phoebe Putney Memorial

Hospital for four days where he underwent several tests to assess why he was still in pain and having severe problems with bodily functions.  Id.  Plaintiff does not make any allegations that he was denied adequate access to medical care during his second stay at Autry State Prison. Moreover, even if he did allege that he was denied adequate access to medical care, he does not allege how Defendant Medical Director of Autry State Prison was in any way personally involved in that denial.  As set forth in Section IV above, Section 1983 liability cannot be based merely on an official's supervisory position or upon a theory of respondeat superior.

Consequently, Plaintiff's claims against Defendant Medical Director at Autry State Prison should be **DISMISSED**.

## IX.  Claims against Defendant John or Jane Doe, Medical Director, Central State Prison

After his third surgery, Plaintiff was transferred to Central State Prison in Macon, Georgia.  (Doc. 1, p. 11.)  Plaintiff began experiencing abdominal pain at Central, and he wrote the Medical Director directly regarding this pain.  Id.  However, the medical director "refused any response to Plaintiff's pleas for medical care."  Id.

It is not clear when Plaintiff was housed at Central State Prison.  It may be that these claims fall outside of the limitations period discussed in Section II above.  However, at this stage, it does not appear beyond a doubt from the face of the Complaint that Plaintiff can prove no set of facts which would avoid a statute of limitations bar as to his claims against the Medical Director at Central State Prison.

As explained in Section IV above, Plaintiff cannot state a claim against the Medical Director at Central State Prison based solely on that Defendant's supervisory position. Additionally, the Medical Director cannot be held liable for merely denying a grievance. However, Plaintiff states that he wrote directly to the Medical Director at Central State Prison

and that Defendant refused Plaintiff's pleas for medical care. Thus, construing Plaintiff's complaint liberally, he has stated a plausible claim that the Medical Director at Central State Prison personally participated in the violation of Plaintiff's Eighth Amendment right to adequate medical care. As such, Plaintiff's claims against the Medical Director at Central State Prison shall proceed.

**X.  Claims against Roy Sabine, Medical Director at Georgia State Prison**

On May 12, 2014, Plaintiff was transferred from Autry State Prison to Georgia State Prison. (Doc. 1, p. 11.) During this time, he continued to experience constant abdominal pain, and he wrote to Defendant Medical Director Roy Sabine ("Sabine") several times but received no response. (Id. at pp. 11–12.) Plaintiff appears to have filed these claims within applicable limitations period. In addition, as with the Medical Director at Central State Prison, Plaintiff has set forth plausible claims that go beyond Sabine's supervisory position or a theory of respondeat superior. Plaintiff alleges that Sabine directly participated in the violation of his Eighth Amendment rights by disregarding requests for medical attention that Plaintiff sent directly to Sabine. Therefore, Plaintiff's claims against Sabine survive frivolity review and will go forward.[4]

However, the Court notes that to the extent Plaintiff attempts to assert claims against Sabine regarding Plaintiff's first stay at Georgia State Prison, those claims should be **DISMISSED**. Plaintiff does not make any allegations that Sabine was personally involved in

---

[4] The Court notes that a plaintiff may not join unrelated claims and various defendants unless the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a); Smith v. Owens, No. 14-14039, 2015 WL 4281241, at *4 (11th Cir. July 16, 2015). At this point, there appears to exist a logical relationship between the allegations against the Medical Director at Central State Prison and the allegations against Sabine as the claims, read liberally, relate to the same medical condition. Accordingly, the Court will allow the joinder of these claims at this time.

any inadequate medical treatment during that stay. As noted above, Plaintiff cannot assert claims against Sabine based merely on his supervisory position.

## XI. Claims for Injunctive Relief

Plaintiff requests that the Court issue an injunction. Specifically, he asks the Court to immediately arrange for Plaintiff to be seen by medical specialists. (Doc. 1, p. 17.) To be entitled to an injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001). Plaintiff has not shown that he has satisfied the prerequisites in order to be entitled to an injunction at this time. Specifically, he has not demonstrated a substantial likelihood of ultimate success on the merits of his claims. Therefore, the Court should **DENY** Plaintiff's request for injunctive relief at this time. However, this is not to say that any request for injunctive relief should be conclusively dismissed; only that Plaintiff's request for the issuance of an injunction is not appropriate at this time.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against all Defendants in their official capacities. I further recommend that the Court **DISMISS** all of Plaintiff's claims against the following Defendants: H. Vaughn, Nurse, Wheeler Correctional Facility; Pat Clark, Medical Director, Wheeler Correctional Facility; Sharon Lewis,

Medical Director, Georgia Department of Corrections; John Doe, Medical Doctor, Savannah Memorial Hospital; Jane Doe, Medical Doctor, Savannah Memorial Hospital; Wynn, Doctor, St. Joseph's Memorial Hospital and Georgia State Prison; Jane or John Doe, Medical Director, Hays State Prison; and Jane or John Doe, Medical Director, Autry State Prison. The Court should **DENY** Plaintiff's request for injunctive relief. Additionally, to the extent Plaintiff seeks to assert claims against Defendant Roy Sabine, Medical Director, Georgia State Prison due to Plaintiff's first stay at Georgia State Prison, those claims should be **DISMISSED**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND REMAINING DEFENDANTS

Plaintiff's allegations arguably state colorable claims for relief under 42 U.S.C. § 1983 against Defendants Medical Director, Central State Prison, and Roy Sabine, Medical Director of Georgia State Prison, for failure to provide adequate medical care under the Eighth Amendment. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon these Defendants by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are

further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## <u>INSTRUCTIONS TO PLAINTIFF</u>

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's Failure notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq.* The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly**

**from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants'

motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 15th day of December, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA